ROBINSON, J., dissenting.
¶ 17. The superintendent's requirement of a new hearing in this case runs afoul of the Department of Corrections' (DOC) established procedures for such cases. For that reason, I would reverse.
¶ 18. The DOC's disciplinary procedures do not authorize the superintendent to vacate an acquittal and order a new hearing because the superintendent concludes that the hearing officer and disciplinary committee made a mistake as to the merits of the disciplinary charge. The policy directive outlining the superintendent's four options on appeal (support the disciplinary committee's decision, reverse the decision, order a new hearing, or modify the sanction imposed), includes a limitation on the superintendent's authority: "Under such a review, the [s]uperintendent cannot find a more serious violation nor impose a harsher sanction than recommended by the [d]isciplinary [c]ommittee." Vermont Department of Corrections Directive 410.01, Facility Rules and Inmate Discipline 14, http://www.doc.state.vt.us/about/policies/rpd/correctional-services-301-550/401-500-programs-security-and-supervision/410-01-facility-rules-and-inmate-discipline.pdf [https://perma.cc/9SF4-VLD3]. In this case, the superintendent's actions vacating the disciplinary committee's recommendation and ordering a new hearing imposed a more severe consequence for plaintiff than recommended by the disciplinary committee.
¶ 19. The suggestion that the restriction noted above limits only the superintendent's authority to directly find a more serious violation or impose a more serious sanction, and does not limit the superintendent's authority to order repeated new hearings leading to the same result, would lead to incongruous results. As one trial court explained, in analyzing the same issue:
Otherwise, the [s]uperintendent could always navigate around the prohibition on finding a more serious violation or imposing a harsher sanction by choosing to order a new hearing rather than making a [direct] determination .... This would create a scenario where the [s]uperintendent, as the head of the hierarchical prison discipline structure, could continue to order new hearings until the desired result is achieved. An interpretation that allows a superintendent to do indirectly what [the superintendent] could not do directly is not a reasonable interpretation of the directive.
Boyd v. Pallito, No. 205-3-11 Rdcv, slip op. at 2-3 (Vt. Dist. Ct. July 22, 2012), https://www.vermontjudiciary.org/20112015T¨cdecisioncvl/2012-9-5-13.pdf [https://perma.cc/872Q-LLQZ].
¶ 20. The superintendent's actions in this case ran afoul of the above limitation. In this case, the superintendent did not identify any procedural irregularity that disadvantaged prosecution of the disciplinary charge; rather, the superintendent reviewed the hearing officer's assessment of the merits, concluded that the hearing officer had made a mistake in evaluating the charges and evidence, and ordered a new hearing-implicitly calling upon the hearing officer to reach an adjudication of guilty. The superintendent's order squarely breached the restriction on his authority noted above.
¶ 21. The majority's alternative analysis is unpersuasive. In particular, the majority evades the limits on the superintendent's authority by analogizing the superintendent *216 to a court, and pointing to a court's authority to correct clerical mistakes in its own records. On this view, the superintendent's order for a new hearing was incident to his authority to correct a clerical mistake. The analogy makes little sense. An appellate court would not remand a judgment because it concluded that the plaintiff or prosecutor made a mistake in its complaint or charging document, that the trial court erred in relying on the mistaken proffer, and that the plaintiff or prosecutor should have an opportunity to revise the document and retry a defendant. Vermont Rule of Civil Procedure 60(a), relied upon in the majority opinion to support the analogy, would not authorize such action.
¶ 22. For the above reasons, I would reverse.